UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IBRAHIM TURKMEN; ASIF-UR-REHMAN
SAFI; SYED AMJAD ALI JAFFRI; YASSER
EBRAHIM; HANY IBRAHIM; SHAKIR
BALOCH; and AKIL SACHVEDA,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

   -against-

JOHN ASHCROFT, Attorney General of the
United States; ROBERT MUELLER, Director
of the Federal Bureau of Investigation; JAMES
W. ZIGLAR, Commissioner of the Immigration
and Naturalization Service; DENNIS HASTY,
former Warden of the Metropolitan Detention
Center; MICHAEL ZENK, Warden of the
Metropolitan Detention Center; JOHN DOES 1-20,
Metropolitan Detention Center, Corrections
Officers; and JOHN ROES 1-20, Federal Bureau of
Investigation and/or Immigration and
Naturalization Service Agents,

                Defendants.
-----------------------------------------------------------X

**O R D E R**

02 CV 2307 (JG)

On April 17, 2002, plaintiffs commenced this action against the Attorney General of the United States, the Director of the Federal Bureau of Investigation ("FBI"), the Commissioner of the (former) Immigration and Naturalization Service ("INS"), current and former wardens of the Metropolitan Detention Center ("MDC"), and two groups of unnamed individuals,[1] pursuant to

---

[1] The "John Doe" defendants are federal employees employed as corrections officers at the MDC (see Second Amended Compl. ¶ 25), and the "John Roe" defendants are federal law enforcement agents "employed by the FBI or the INS." Id. ¶ 26.

Turkmen-clean

1

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Alien Tort Claims Act, 28 U.S.C. § 1350, and the Vienna Convention on Consular Relations, April 24, 1963, art. 36, TIAS 6820, 21 U.S.T. 77. Plaintiffs allege that they and other male non-citizens from the Middle East and South Asia were unlawfuly detained in the wake of the September 11, 2001 terrorist attacks. Plaintiffs allege, *inter alia*, that the conditions of their confinement were unreasonably harsh and that they were the victims of excessive force.

By letter dated July 31, 2001, plaintiffs sought an Order from this Court allowing them to "conduct limited discovery for the purpose of determining the identities of the unnamed defendants in this action" and imposing "an order requiring all defendants . . . to preserve any and all documents . . . that concern the matters complained of in the Second Amended Complaint. . . ." (Pls.' Letter dated July 31, 2003 at 1). Defendants oppose both of these requests. (See Defs.' Letter, dated August 4, 2003; Def. Ashcroft's Letter, dated August 4, 2003; and Def. Mueller's Letter, dated August 5, 2003).

## FACTUAL BACKGROUND

In their amended complaint, plaintiffs allege that they and the members of the putative class were arrested and detained on minor immigration violations following the September 11, 2001 terrorist attacks on the United States.[2] The class that plaintiffs seek to represent consists of:

> all male, non-citizens from the Middle East, South Asia and elsewhere who are Arab or Muslim or have been perceived by Defendants as Arab or Muslim and who have been:

---

[2]The facts set forth herein are derived from the allegations in the Second Amended Complaint.

Turkmen-clean

2

>    (a) arrested on immigration violations by the INS or FBI after the September 11th terrorist attacks;
>    (b) treated as being 'of interest' to the government's terrorism investigation, and subjected to a blanket 'hold until cleared' policy pursuant to which they were held without bond, without regard to evidence of dangerousness or flight risk, until cleared of terrorist ties by the FBI;
>    (c) detained at the MDC or the Passaic County Jail; and
>    (d) never afforded, or else not afforded on a timely basis, a hearing before a neutral judicial officer for a determination as to whether probable cause existed to justify detaining them beyond the time necessary to secure their removal or voluntary departure from the United States.

(Second Amended Compl. ¶ 28). Plaintiffs claim that they and the putative class members were held without adequate justification under unreasonably harsh conditions that impeded their access to counsel. (Id. ¶ 1). In addition, plaintiffs allege that some class representatives, as well as some putative class members, suffered physical and verbal abuse while incarcerated. (Id. ¶ 3). Plaintiffs allege that these practices amounted to violations of the First, Fourth, Fifth and Sixth Amendments to the Constitution of the United States. (Id. ¶ 10). Defendants have made a motion to dismiss on, *inter alia*, grounds of qualified immunity. (See Defs.' Letter, dated August 4, 2003 at 2). While that motion is pending before the District Judge, plaintiffs seek leave from this Court to conduct "limited" discovery and seek an Order requiring the preservation of documents.

## DISCUSSION

It is well established that government officials are immune from liability for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The

.Turkmen-clean

3

purpose of qualified immunity is "to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" Anderson v. Creighton, 483 U.S. 635, 646 (1987) (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)). Thus, "qualified immunity questions should be resolved at the earliest possible stage of litigation," Anderson v. Creighton, 483 U.S. at 646 n.6; Harlow v. Fitzgerald, 457 U.S. at 817, in an effort to "avoid excessive disruption of government." Harlow v. Fitzgerald, 457 U.S. at 818.

The defense of qualified immunity was designed not only to shield government officials from claims for damages, but also to counteract the wide-ranging consequences of personally defending a lawsuit which include "'the general costs of subjecting officials to the risks of trial -- distraction of officials from their official duties, inhibition of discretionary action, and deterrence of able people from government services.'" Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. at 816). To this end, courts have held that, where possible, pretrial discovery should be avoided because broad-ranging discovery inquiries can be "peculiarly disruptive of effective government." Anderson v. Creighton, 483 U.S. at 646 n.6 (quoting Harlow v. Fitzgerald, 457 U.S. at 817); but see Giacalone v. Abrams, 850 F.2d 79, 84 (2d Cir. 1988) (stating that "qualified immunity frees an official only from the burden of defending against personal liability for damages . . . . [since] the burden of defending such claims in an official capacity is less than the burden of defending such claims in a personal capacity"). This Court, in Gul v. Sava, Nos. 88 CV 1220, 88 CV 3956, 1990 WL 82822, at *2 (E.D.N.Y. June 11, 1990), has acknowledged that "the burden of defending against suits in which government officials are personally at risk may unnecessarily 'distract' government officials from their official duties."

Turkmen-clean

4

However, while the Supreme Court has indicated that qualified immunity defenses may be decided on a dispositive motion in order "to permit the resolution of many insubstantial claims" before discovery has commenced, see Mitchell v. Forsyth, 472 U.S. at 526, it has opined that there are circumstances when limited discovery should precede a decision on qualified immunity. See Anderson v. Creighton, 483 U.S. at 646 n.6. Indeed, courts have declined to issue orders staying discovery when, as here, plaintiffs seek not only damages but also injunctive relief,[3] for which there is no defense of qualified immunity. See Lugo v. Alvarado, 819 F.2d 5, 7 (1st Cir. 1987) (noting that "the suspension of discovery proceedings on the equitable claims, solely because of an allegation of qualified immunity, only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of whether there is a surviving damage action); see also Tubbesing v. Arnold, 742 F.2d 401, 404 (8th Cir. 1984).

Here, plaintiffs, in part, request discovery pursuant to Fed. R. Civ. P. 26(d), to obtain the identities of the officers involved in the conduct alleged in the complaint in order to name them as defendants in the case. (Pls.' Letter, dated July 31, 2003 at 1). The disclosure of this information will not unduly burden defendants, and is necessary in order for plaintiffs to effectuate service upon the unnamed individuals referenced in the complaint. Indeed, plaintiffs are concerned that two years out of the three year statute of limitations applicable to a Bivens

---

[3]Here, plaintiffs seek a declaratory judgment holding that defendants' practices are unlawful and an injunction requiring that all property taken from the plaintiffs be immediately returned. (See Second Amended Compl., "Prayer For Relief").

.Turkmen-clean

5

action have already run and they need the discovery as to the identity of the John Doe and John Roe defendants to serve them in a timely fashion. Moreover, since the information regarding the identities of these individuals does not necessarily require the individual defendants' participation in the discovery process, but is presumably contained in the government's records, such information will not be disruptive of the individual officers' responsibilities and, therefore, should be disclosed.[4]

However, to the extent that plaintiffs' proposed subpoenas duces tecum seek far more than just that information necessary to identify the John Doe and John Roe defendants, (see Pls.' Letter, dated July 31, 2003, Exs. 1-4),[5] the requests raise the very concerns that the defense of qualified immunity was designed to guard against. Specifically, plaintiffs' proposed subpoenas seek testimony and documents relating to several of the plaintiffs' substantive claims. Such discovery is inappropriate at this time. Accordingly, prior to a decision on defendants' motion to dismiss, defendants are ordered to produce only that documentary evidence or other written

---

[4]Plaintiffs argue that "the pending motion to dismiss has no bearing on plaintiffs' claims against the unnamed defendants." (Pls.' Letter, dated July 31, 2003 at 2). Defendants counter by arguing that their motion to dismiss seeks the dismissal of plaintiffs' claim for coercive and involuntary custodial interrogation, and, since this claim is based upon the alleged conduct of the John Roe defendants, no discovery should be had as to their identities. (See Defs.' Letter, dated August 4, 2003, at 2). In fact, the pending motions to dismiss do concern the viability of plaintiffs' claims against the unnamed defendants. However, as set forth above, plaintiffs' need to serve the unnamed defendants in a timely fashion and the minimal burden entailed in the limited discovery Ordered by this Court justify the identification of the unnamed defendants at this time.

[5]Plaintiffs proposed subpoenas are addressed to: the Federal Bureau of Investigation; the Department of Homeland Security; the Bureau of Prisons; and the Office of the Inspector General of the Department of Justice. (See Pls.' Letter, dated July 31, 2003, Exs. 1-4).

.Turkmen-clean

6

discovery sufficient to identify the John Doe and John Roe defendants - - namely, those federal law enforcement agents who had contact with the named plaintiffs.

Plaintiffs also seek an Order requiring defendants to preserve all documents "that concern the matters complained of in [plaintiffs'] Second Amended Complaint . . . ." (Pls.' Letter, dated July 31, 2003, at 1). However, plaintiffs have made no showing that such an Order is necessary. There is no evidence that any of the defendants have engaged in any document destruction. Furthermore, parties have an independent obligation to preserve evidence relevant to pending litigation. See Shaffer v. RWP Group, Inc., 169 F.R.D. 19, 24 (E.D.N.Y. 1996) (finding that defendants' obligation to preserve documents arose upon service of the complaint). Therefore, the Court is not persuaded that a document preservation Order is necessary to ensure defendants' compliance with this obligation.

For the foregoing reasons, the Court finds that: 1) plaintiffs may serve document requests and/or interrogatories for the limited purpose of ascertaining the identities of the unnamed defendants; and 2) plaintiffs' request for a document preservation Order is denied.


**SO ORDERED.**


Dated: Brooklyn, New York
August 26, 2003

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

.Turkmen-clean