**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
**Ibrahim Turkmen, et al.,**

                        **Plaintiffs,**

          -against-                                     **ORDER**
                                                                   **02-CV-2307 (JG)**
**John Ashcroft, et al.,**

                        **Defendants.**
----------------------------------------------------------X
**Ehab Elmaghraby, et al.,**

                        **Plaintiffs,**

          -against-
                                                                   **04-CV-1809 (JG)**
**John Ashcroft, et al.,**

                        **Defendants.**
----------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## Introduction

       The United States seeks reconsideration of an order I issued during a conference held in these related actions on March 7, 2006. The order was entered in response to a motion by plaintiffs to compel the United States to answer an interrogatory asking "whether any telephone, email or other communication between any plaintiff and his counsel was monitored or intercepted since the plaintiff's removal from the United States." Turkmen Plaintiffs' Interrogatory No. 9.

       During the conference on March 7, 2006, the following colloquy with government counsel took place:

THE COURT:         Now, let's take a look at [interrogatory] 9 . . . . Let me give you an off-the-cuff reaction without the benefit of your input and then I'll hear from

each of you.

My instinct is that Mr. Handler's right. This has nothing to do really with the claims in this case. However, they [plaintiffs' counsel] can't be expected to prepare their case if they think that somebody's listening to their conversations with their client.

I think they're entitled, at a minimum, to a representation that no member of the trial team is aware that any of this [is] going on . . . – and that as far as you know, no witness who might testify in this case is aware that any of this is going on. And third, that there is no intention to use any evidence developed through any mechanism, such as 9 . . ., in connection with the defense of this action. At a minimum, I think they're entitled to that.

Is there any difficulty with that kind of representation?

\* \* \*

MR. HANDLER: I have no knowledge and [have] not received any information that would be along those lines.

THE COURT: I need it formally on behalf of the entire trial team. . . .

\* \* \*

MR. HANDLER: Okay. We'll prepare a written response.

\* \* \*

THE COURT: I want to know that no member of the trial team is aware of any of this activity. I want a representation that as far as the members of the litigation – [When] I say trial team, I mean the litigation team and support staff, et cetera – that as far as you know, no witness who might testify in this action is aware of any information culled through devices such as described in 9 . . . . And I want a commitment that no information developed through such means will be used in the litigation of this case.

Tr. of March 7, 2006, Docket Entry 481, at 31-33.

Despite the parties' apparent agreement with the resolution described above, the

2

government filed a letter on March 17, 2006, seeking reconsideration. Docket Entry 477.[1] The substance of the government's motion reads in its entirety as follows:

> After further examination of the issue, the Department of Justice has concluded that it would be inappropriate to provide on the public record any further answers to the above questions, including as to the trial team. No official or employee of the government, including trial counsel, can publicly confirm or deny whether any communications were intercepted by classified means. If, for example, an official or employee, including trial counsel, did not know about such intercepts and so indicated in one case, any refusal to confirm or deny such intercepts in another case could itself reveal classified information. Thus, even if no interceptions occurred in this case, a denial by the government as to such intercepts could tend to reveal classified information.

Gov't Letter dated March 17, 2006, at 1-2.

Plaintiffs opposed the government's motion for reconsideration, Docket Entry 478, and the government responded by modifying its position. By letter dated March 27, 2006, the government represented that "no member of the trial team has received" or "expects or intends to receive any intercepts of attorney-client communications," and that "no such intercepts will be used in the defense of the action." Gov't Letter dated March 27, 2006, Docket Entry 479, at 1.

Plaintiffs responded by letter dated March 30, 2006, Docket Entry 482, and argued that the government's representations were insufficient to comply with the order issued on March 7, 2006. More specifically, plaintiffs pointed out that the government's letter failed to confirm that either trial team members or witnesses were unaware of any interception of confidential communications between plaintiffs and their attorneys, and provided "no assurance that witnesses will not have access to the content of any such interceptions." Pl. Letter dated March

---

[1] All references to docket entries are to the docket in 02-CV-2307. Identical documents have been docketed with different identifying numbers in 04-CV-1809.

30, 2006 at 1. The government then reiterated its objection to providing this additional information, asserting that "[t]o do so, as previously explained, could tend to reveal classified information by inviting comparisons to the government's responses in other cases." Gov't Letter dated April 13, 2006, Docket Entry 410, at 2.

In an effort to resolve the apparent impasse, I suggested that the government might have its witnesses make a series of representations in the alternative, so that the specific information the government sought to protect would not be revealed. The government accepted my suggestion with minor revisions, and proposed that its witnesses might subscribe to the following series of alternative representations:

    1)    I am not aware of any surveillance or interception of the substance of attorney-client communications between plaintiffs and their counsel in these actions; OR

    2)    I have never been made aware of the substance of any attorney-client communications between plaintiffs and their counsel in these actions; OR

    3)    I do not have, and have not had since the first time I met with trial counsel representing the United States, i.e., Stephen Handler, Clay Mahaffey, and Ernesto Molina (hereinafter, the "trial counsel"), any recollection of the substance of any attorney-client communications between plaintiffs and their counsel in these actions; OR

    4)    I have not communicated the substance of any attorney-client communications between plaintiffs and their counsel in these actions that I recall to trial counsel and have not used the substance of any attorney-client communications between plaintiffs and their counsel in these actions to influence trial counsel's conduct of this case in any manner. I agree not to do so in the future, and I cannot anticipate any reason why truthfully answering questions relevant to the allegations plaintiffs make in this case would require me to communicate the substance of any attorney-client

> communications.
>
>> I declare that at least one of the above four paragraphs is true, and I agree that, if I become aware of the substance of attorney-client communications between plaintiffs and their counsel in these actions in the future, I will not reveal them to trial counsel.

Gov't Letter dated May 5, 2006, Docket Entry 489. However, the government qualified its proposal by stating it would ask only witnesses with "relevant factual knowledge regarding the plaintiffs' allegations" to sign the statement, reserving the right to interview witnesses who refused to sign the statement, and conditioning production of the statements on an agreement that no discovery be taken about them and that the statements not be used by plaintiffs' counsel in any manner. Gov't Letter dated May 5, 2006, at 2.

Plaintiffs assert that the government's proposal is inadequate, and persist in their demand for discovery of whether any member of the trial team or any government witness is aware of any electronic surveillance of any communications between any plaintiff and his counsel, and a representation that any information obtained through such surveillance will not be used in the defense of this case.

## **Discussion**

Rule 26 of the Federal Rules of Civil Procedure provides for broad discovery.

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). Clearly, statements made by plaintiffs to the attorneys representing them in this action are likely to be relevant to the parties' claims and defenses. Indeed, the

criminal rules, which afford defendants narrower discovery than is available in civil cases, require the prosecution to produce any statements made by a defendant to a government agent. See FED. R. CRIM. P. 16(a)(1).

Moreover, as plaintiffs' counsel have repeatedly argued, they seek discovery here not only to help prepare their case, but also to ensure that the defendants have not gained a tactical advantage by invading the attorney-client privilege, and to attain some degree of comfort that they and their clients may communicate without the chilling specter of government eavesdropping. See Pl. Letter dated May 12, 2006, Docket Entry 491, at 1 n.1. The significance of the attorney-client privilege and its goal of frank and candid communication between a represented party and his counsel is too well-settled to require lengthy citation. See, e.g., Swidler & Berlin v. U.S., 118 S.Ct. 2081, 2084-88, 524 U.S. 399, 403-10 (1998); Upjohn Co. v. U.S., 449 U.S. 383, 389-91, 101 S.Ct. 677, 682-83 (1981); Chase Manhattan Bank v. Turner & Newall, PLC, 964 F.2d 159, 165 (2d Cir. 1992).

Plaintiffs' effort to learn whether their conversations with their attorneys were monitored by the government is not a mere fishing expedition based on unfounded speculation. An investigation conducted by the Office of the Inspector General for the United States Department of Justice found that, on more than forty occasions, members of the staff at the Metropolitan Detention Center ("MDC"), the facility where many of the plaintiffs were held,

> recorded detainees' visits with their attorneys using video cameras. . . . On many videotapes, we were able to hear significant portions of what the detainees were telling their attorneys and sometimes what the attorneys were saying as well.

OFFICE OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, SUPPLEMENTAL REPORT ON SEPTEMBER

11 DETAINEES' ALLEGATIONS OF ABUSE AT THE METROPOLITAN DETENTION CENTER IN BROOKLYN, NEW YORK at 31 (Dec. 2003) ("OIG Sup. Rep."), Turkmen Third Am. Compl., Ex. 1, Docket Entry 109.

In opposition to plaintiffs' motion, the government asserts, in a conclusory manner, that disclosing whether any conversations between plaintiffs and their counsel were monitored would reveal classified information. Gov't Letter dated Mar. 17, 2006, at 1-2. The government has failed to present any specific facts or information in support of its contention that providing the information sought by plaintiffs would result in the disclosure of classified information. In any event, it is difficult to imagine what relevant facts remain secret but would be revealed if the information at issue were provided.

Presumably, the government's concern with revealing classified information has to do with the fact that plaintiffs, at least as alleged in their complaint, were detained following the September 11, 2001 terrorist attacks in the United States as persons "of interest" to the government's investigation. Turkmen Third Am. Compl. ¶ 1. However, the government's electronic surveillance of individuals suspected of links to terrorism has received widespread publicity and has even been acknowledged by the President of the United States and other high-level government officials. See, e.g., James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, THE N.Y. TIMES, Dec. 16, 2005, at 1; Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public*, THE N.Y. TIMES, Jan. 2, 2006, at 11; Elisabeth Bumiller, *Bush Sees No Need for Law to Approve Eavesdropping*, THE N.Y. TIMES, Jan. 27, 2006, at 20; Dan Eggen, *Gonzales Defends Surveillance; Senators from Both Parties Challenge Attorney General on Program*, THE WASHINGTON POST, Feb. 7, 2006, at A01; Charles

Babington & Dan Eggen, *Gonzalez Seeks to Clarify Testimony on Spying; Extent of Eavesdropping May Go Beyond NSA Work*, THE WASHINGTON POST, Mar. 1, 2006, at A08. Moreover, the detention of individuals suspected of involvement in terrorist activities at the MDC after September 11, 2001, has also been documented. See OIG Sup. Rep. at 2. Finally, it appears that all of the plaintiffs have been "cleared" by the FBI of having links to terrorism. See Turkmen Third Am. Compl. ¶ 1, citing OFFICE OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, THE SEPTEMBER 11 DETAINEES: A REVIEW OF THE TREATMENT OF ALIENS HELD ON IMMIGRATION CHARGES IN CONNECTION WITH THE INVESTIGATION OF THE SEPTEMBER 11 ATTACKS (June 2003). Accordingly, any claim that sensitive secrets would be revealed by the government's disclosure of whether conversations between plaintiffs and their counsel in this case were monitored is hard to fathom.

As discussed above, the government, modifying a proposal I made, suggests that both its concern with secrecy and plaintiffs' concern with access to relevant information could be met by having witnesses sign a statement declaring that at least one of four alternative representations is true. Plaintiffs have persuaded me, however, that this proposal is not adequate for at least two reasons. First, the government seeks to preclude discovery about the witness statements. However, one of the alternative representations suggests that the witness is aware of the substance of an attorney-client communication, but has not related the substance of the communication to members of the trial team or allowed his knowledge of the substance to influence his testimony. Plaintiffs should be entitled to test this representation in discovery just as they would any other important statement made by an adverse witness, and not be required merely to rely upon a conclusory declaration without access to the underlying specific facts.

Second, while the government states that it will agree to request that its witnesses sign the proposed statement, it also seeks to reserve its right to interview witnesses who refuse to sign the statement, and to preclude plaintiffs from using the witness statements in connection with the litigation in any way. Clearly, members of the trial team should not be interviewing witnesses who have heard plaintiffs' attorney-client conversations and are unable to say that they will not share the contents with government counsel. Moreover, plaintiffs should be permitted to rely upon the witness statements if, for example, they conclude it is appropriate to move to limit or exclude testimony or disqualify counsel based upon the information the witness statements reveal. Cf. Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005) (recognizing that a "taint arises when an attorney places himself in a position where he could use a client's privileged information against that client" and that an attorney in such a position may, under certain circumstances, be subject to disqualification).

For similar reasons, I reject the government's suggestion that, even if trial team members or witnesses who have knowledge of the substance of attorney-client communications must be disclosed, the government need not identify team members or witnesses who merely know that communications were intercepted but have not been made aware of their substance. As suggested above, plaintiffs should be permitted to test the recollection and accuracy of witnesses who assert that they are aware that privileged communications were intercepted but deny knowledge of the substance of the interception. Second, even details about an attorney-client communication other than its substance – for example, when it occurred relative to other critical events, how long it lasted, where the attorney and client were when they communicated – might reveal information protected by the attorney work-product doctrine. Cf. Sporck v. Peil, 759 F.2d

9

312, 316 (3d Cir. 1985) ("[T]he selection and compilation of documents by counsel in this case . . . falls within the highly-protected category of opinion work product."); Gould Inc. v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676, 680 (2d Cir. 1987) (recognizing the validity of the Sporck argument but requiring a "real, rather than speculative, concern" that counsel's thought processes might be revealed with respect to the selection of documents). See also Hickman v. Taylor, 329 U.S. 495, 510-512, 67 S.Ct. 385, 393-94 (1947) (discussing generally the significance of work-product protection).

## **Conclusion**

For all these reasons, the government's motion for reconsideration is denied, and the government is directed to comply with the ruling I made during the conference held on March 7, 2006. More specifically, the government shall, within three weeks of the date of this order or, if an appeal is taken, within three weeks of any decision affirming this order:

> (1) state whether any member of the trial team is aware of any monitoring or surveillance of communications between any of the plaintiffs and their attorneys in either of these related actions. The "trial team" includes all attorneys and support staff who are participating in the defense of this case, as well as any supervisors or other individuals who are providing guidance or advice or exercising decision-making authority in connection with the defense of the United States in these cases;
>
> (2) state whether any individual who has been identified as a likely witness in either of these cases is aware of any monitoring or surveillance of communications between any of the plaintiffs and their attorneys in either of these related actions; and
>
> (3) state whether any information obtained from monitoring or surveillance of communications between any of the plaintiffs and their attorneys in either of these related actions will be used in any way by the United States in its defense of these cases and, if so, identify the information that will be so used.

As my order indicates, the scope of the government's inquiry should be limited to the trial team and likely witnesses, and does not extend to the government as a whole; were I to rule otherwise, there is the possibility of tainting the trial team by exposing them to information they would not be aware of but for the investigation they conducted in response to my order. The government's duty to respond is, of course, a continuing one, and any responses must be supplemented as new witnesses are identified or additional responsive information comes to light. Finally, if a witness or member of the trial team with knowledge of monitoring or surveillance is identified, it may be sensible to have the ensuing investigation conducted by an isolated team of attorneys to avoid further taint.

**SO ORDERED.**

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
May 30, 2006

U:\turkman 053006.wpd