06-3745-cv(L)
Turkmen, et al. v. Ashcroft, et al.

1                **UNITED STATES COURT OF APPEALS**
2
3                   **FOR THE SECOND CIRCUIT**
4
5                     August Term, 2007
6
7
8   (Argued: February 14, 2008      Decided: December 18, 2009)
9
10        Docket Nos. 06-3745-cv(L); 06-3785-cv(Con);
11             06-3789-cv(Con); 06-3800-cv(Con);
12                     06-4187-cv(XAP)
13
14  - - - - - - - - - - - - - - - - - - - - -x
15
16  IBRAHIM TURKMEN, ASIF-UR-REHMAN SAFFI,
17  SYED AMJAD ALI JAFFRI, AKIL SACHDEVA,
18  SHAKIR BALOCH, HANY IBRAHIM, YASSER
19  EBRAHIM, ASHRAF IBRAHIM,
20
21               Plaintiffs-Appellees-Cross-
22  _____Appellants,
23
24        - v.-
25
26  JOHN ASHCROFT, Former United States
27  Attorney General, DENNIS HASTY, Former
28  Warden of MDC, JAMES W. ZIGLAR,
29  Commissioner, Immigration and
30  Naturalization Service, JAMES SHERMAN,
31  ROBERT MUELLER,
32
33               Defendants-Appellants-
34  _____Cross-Appellees,
35
36  JOHN DOES 1-20, MDC Corrections Officers,
37  MICHAEL ZENK, Warden of MDC, CHRISTOPHER
38  WITSCHEL, CLEMETT SHACKS, BRIAN
39  RODRIGUEZ, JON OSTEEN, RAYMOND COTTON,
40  WILLIAM BECK, SALVATORE LOPRESTI, STEVEN
41  BARRERE, LINDSEY BLEDSOE, JOSEPH CUCITI,
42  HOWARD GUSSAK, MARCIAL MUNDO, DANIEL
43  ORTIZ, STUART PRAY, ELIZABETH TORRES,
44  PHILLIP BARNES, SYDNEY CHASE, MICHAEL

1   DEFRANCISCO, RICHARD DIAZ, KEVIN LOPEZ,
2   MARIO MACHADO, MICHAEL MCCABE, RAYMOND
3   MICKENS, SCOTT ROSEBERY, UNITED STATES,
4
5                        Defendants.
6
7   - - - - - - - - - - - - - - - - - - - -x
8

9        Before:        JACOBS, Chief Judge, and RAGGI, Circuit
10                       Judge.*
11
12
13       Cross appeals from an order entered in the United

14   States District Court for the Eastern District of New York

15   (Gleeson, J.) granting in part and denying in part motions

16   to dismiss made by certain defendants.  Plaintiffs plead a

17   host of claims alleging abuse, mistreatment, and detention

18   of Arab and Muslim aliens who were held on immigration

19   violations in the wake of the terrorist attacks of September

20   11, 2001.  For the reasons that follow, we affirm the

21   district court order insofar as it dismissed certain claims,

22   and we vacate that order insofar as it denied the

23   defendants' motions to dismiss certain remaining claims.

24

---

        * The Honorable Sonia Sotomayor, originally a member of
the panel, was elevated to the Supreme Court on August 8,
2009.  The two remaining members of the panel, who are in
agreement, have determined the matter.  See 28 U.S.C. §
46(d); Local Rule 0.14(2); United States v. Desimone, 140
F.3d 457 (2d Cir. 1998).

```
 1                        MICHAEL WINGER, (C. William
 2                        Phillips, Kate Greenwood, Amanda
 3                        J. Gourdine, Kimberly Zelnick,
 4                        Douglas Bloom, and Joanne Sum-
 5                        Ping, on the brief), Covington &
 6                        Burling LLP, New York, NY;
 7                        RACHEL MEEROPOL (Matthew
 8                        Strugar, William Goodman,
 9                        Shayana Kadidal, and William
10                        Quiqley, on the brief) Center
11                        for Constitutional Rights, New
12                        York, NY; DAVID COLE, Georgetown
13                        University Law Center,
14                        Washington, D.C.; and CLAUDIA
15                        SLOVINSKY, Law Offices of
16                        Claudia Slovinsky, New York, NY,
17                        for Plaintiffs-Appellees-Cross-
18                        Appellants.
19
20                        ROBERT M. LOEB, (Peter D.
21                        Keisler, Assistant Attorney
22                        General, Gregory G. Garre,
23                        Deputy Solicitor General,
24                        Jonathan F. Cohn, Deputy
25                        Assistant Attorney General,
26                        Kannon K. Shanmugam, Assistant
27                        to the Solicitor General, Tony
28                        West, Assistant Attorney
29                        General, Barbara L. Herwig,
30                        Sarang V. Damle, Dennis C.
31                        Barghaan, Richard W. Sponseller,
32                        Larry Lee Gregg, and R. Craig
33                        Lawrence, Assistant United
34                        States Attorneys, on the brief)
35                        United States Department of
36                        Justice, Washington, D.C.,
37                        United States Attorney's Office
38                        for the District of Columbia,
39                        Washington, D.C., and United
40                        States Attorney's Office for the
41                        Eastern District of Virginia,
42                        Alexandria, VA, for Defendants-
43                        Appellants-Cross-Appellees John
44                        Ashcroft and Robert Mueller.
```

3

1            WILLIAM ALDEN MCDANIEL, JR.
2            (Bassel Bakhos, on the brief),
3            Law Office of William Alden
4            McDaniel, Jr., Baltimore, MD,
5            for Defendant-Appellant-Cross-
6            Appellee James Ziglar.

8            MICHAEL L. MARTINEZ (Shari Ross
9            Lahlou, David E. Bell, Justin P.
10           Murphy, Kyler E. Smar, and
11           Matthew F. Scarlato, on the
12           brief) Crowell & Moring LLP,
13           Washington, D.C., for Defendant-
14           Appellant-Cross-Appellee Dennis
15           Hasty.

17           DEBRA L. ROTH (Thomas M.
18           Sullivan, on the brief), Shaw,
19           Bransford, Veilleux & Roth,
20           P.C., Washington, D.C., for
21           Defendant-Appellant-Cross-
22           Appellee James Sherman.

24           SITAL KALANTRY, Cornell Law
25           School, Ithaca, NY for amici
26           curiae former wardens and senior
27           prison officials in support of
28           Plaintiffs-Appellees-Cross-
29           Appellants.

31   PER CURIAM:

32       This putative class action was brought by seven named

33   plaintiffs, all non-citizens who were detained on

34   immigration violations following the terrorist attacks of

35   September 11, 2001.[1]  The plaintiffs allege, inter alia,

---

[1] An eighth named plaintiff, Syed Amjad Ali Jaffri, has
withdrawn his claims.

4

1    that on account of their Arab or Muslim background (or

2    perceived background), they were subjected to excessively

3    prolonged detention, abused physically and verbally,

4    subjected to arbitrary and abusive strip searches, and

5    otherwise mistreated while in custody.  Crucially,

6    plaintiffs acknowledge that at the time they were detained

7    they were present in the United States illegally, and were

8    subject to removal.  Their constitutional claims rest on (i)

9    the conditions of their confinement, and (ii) the allegation

10   that their detentions were illegally prolonged so that the

11   Government could investigate any potential ties to

12   terrorism.

13       Plaintiffs brought thirty-one separate claims against

14   thirty-one identified defendants, including the United

15   States, former Attorney General John Ashcroft, FBI Director

16   Robert Mueller, and former Immigration and Naturalization

17   Service ("INS") Commissioner James W. Ziglar, as well as

18   Metropolitan Detention Center ("MDC") officials and

19   correctional officers.

20       The United States, Ashcroft, Mueller, and Ziglar, as

1  well as four high-ranking MDC officials[2] (collectively, the

2  "moving defendants") moved to dismiss certain claims on

3  grounds that include qualified immunity and failure to state

4  a claim.  At the risk of oversimplifying a complex ruling:

5  the United States District Court for the Eastern District of

6  New York (Gleeson, J.) denied the motions to dismiss claims

7  concerning the conditions of confinement, but dismissed

8  claims concerning the length of detention.  See Turkmen v.

9  Ashcroft, No. 02 Civ. 2307(JG), 2006 WL 1662663, at *1

10  (E.D.N.Y. June 14, 2006).  Both sides appealed.

11

12                                I

13      On November 2, 2009, plaintiffs moved for dismissal

14  without prejudice of the pending appeals and cross-appeals

15  in their entirety.  Plaintiffs argue principally that the

16  appeals and cross-appeals are moot in light of a settlement

17  recently reached with five named plaintiffs and plaintiffs'

---

[2] By consolidated motion, former MDC wardens Dennis
Hasty and Michael Zenk joined the United States, Ashcroft,
Mueller, and Ziglar in moving to dismiss.  The United States
sought partial dismissal, and the five individual defendants
sought dismissal of all claims brought against them.  MDC
associate warden James Sherman separately moved to dismiss
all claims brought against him, as did MDC unit manager
Clemmet Shacks.

1   counsel's intent to seek leave in the district court to file

2   a proposed Fourth Amended Complaint on behalf of the two

3   remaining plaintiffs, other plaintiffs to be named, and the

4   putative class.  Ashcroft and Mueller oppose such a

5   dismissal.

6       Plaintiffs argue that we should dismiss as moot the

7   appeals related to the denial of the conditions of

8   confinement claims, because the two remaining named

9   plaintiffs (Ibrahim Turkmen and Akil Sachdeva) did not

10  appeal the dismissal of claim 3 and never asserted claims

11  20-23.  However, plaintiffs' counsel intends to preserve

12  claims 3 and 20-23 as part of the putative class complaint

13  by proposing to file a Fourth Amended Complaint adding five

14  new named plaintiffs.  Further, Ashcroft and Mueller argue

15  that they appealed the district court's decision to deny the

16  dismissal of claims 5 (in part), 7, and 8 (in addition to

17  claims 3 and 20-23)--three claims that Turkmen and Sachdeva

18  asserted along with the five settling plaintiffs.

19  Plaintiffs indicate that the proposed Fourth Amended

20  Complaint will not allege claim 8; however, claims 5 and 7

21  remain live (as does claim 8 pending its withdrawal).

22  Moreover, defendants retain a strong interest in a decision

1    on their invocation of qualified immunity concerning claims

2    that have been long pending and (as plaintiffs' counsel

3    confirms) will be asserted in a new pleading.  Finally, this

4    is not the kind of case in which the class representative's

5    interest abated during briefing or before oral argument; the

6    settlement did not arise until long after the February 14,

7    2008 argument and the settling plaintiffs thus maintained a

8    personal stake in pressing this appeal throughout.

9         Based on these circumstances and the district court's

10   stay of the class certification motion, this Court is

11   persuaded that the appeals related to the conditions of

12   confinement claims are not moot.  See Comer v. Cisneros, 37

13   F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named

14   plaintiffs become moot prior to class certification, there

15   are several ways in which mootness is not had."); see also

16   Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("To

17   the extent that appellants' argument is that Swan's death

18   does not moot the class claim if one of the proposed

19   intervenors can be substituted as named plaintiff, we

20   agree."); In re Nat'l Australia Bank Sec. Litig., No. 03

21   Civ. 6537(BSJ), 2006 WL 3844463, at *2 (S.D.N.Y. Nov. 8,

22   2006) (recognizing general rule that lack of class

1    representative renders class action moot, and exceptions to

2    that rule where motion for class certification is pending or

3    plaintiff did not have reasonable opportunity to move for

4    class certification); id. at *3 (explaining that live

5    controversy exists where new named plaintiff may be

6    substituted or may intervene upon pre-certification mooting

7    of class representative's claims).  Accordingly, we deny

8    plaintiffs' motion to dismiss this appeal without prejudice

9    on the ground of mootness.[3]

10          The appeals and cross-appeals are hereby dismissed only

11   to the limited extent necessary to recognize the settlement

12   of five named plaintiffs.  Despite this settlement and the

13   proposed Fourth Amended Complaint, virtually all of the

14   appeals and cross-appeals remain pending for our review

---

[3] Plaintiffs do not argue that their cross-appeals
related to the length of detention claims are moot.  Any
such argument would be untenable because the two remaining
plaintiffs joined the settling plaintiffs in appealing the
dismissal of claims 1, 2, and 5 (in part).  The district
court also dismissed two additional claims, 24 and 25, which
are related to the length of detention.  We do not reach
claim 24 because it was asserted only by the settling
plaintiffs (and not by the two remaining plaintiffs); the
proposed Fourth Amended Complaint does not seek to preserve
claim 24 through the proposed intervenor plaintiffs; and
Ashcroft and Mueller concede that claim 24 is moot.  We do
not reach claim 25 because no plaintiffs appealed the
dismissal of this claim.

1 because (i) the two remaining plaintiffs asserted several of

2 the claims underlying the moving defendants' appeals, and

3 (ii) plaintiffs propose to file a Fourth Amended Complaint

4 preserving for the putative class the claims asserted only

5 by the settling plaintiffs through the addition of the

6 proposed intervenor plaintiffs.

7

8          **II**

9  We review de novo the grant or denial of a motion to

10 dismiss a complaint.  See Woods v. Rondout Valley Cent. Sch.

11 Dist. Bd. of Educ., 466 F.3d 232, 235 (2d Cir. 2006).  "To

12 survive a motion to dismiss, a complaint must contain

13 sufficient factual matter, accepted as true, to 'state a

14 claim to relief that is plausible on its face.'"  Ashcroft

15 v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl.

16 Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  "A claim has

17 facial plausibility when the plaintiff pleads factual

18 content that allows the court to draw the reasonable

19 inference that the defendant is liable for the misconduct

20 alleged."  Id.

21

22          **III**

1    We first consider defendants' challenge to the district

2    court's order denying dismissal of claims related to the

3    conditions of confinement--claims 3, 5 (in part), 7, 8, and

4    20-23.

5    The district court ruled on the defendants' motions to

6    dismiss prior to the Supreme Court's decisions in Twombly

7    and Iqbal.  It applied a standard of review under which it

8    would not dismiss a claim "unless it appears beyond doubt .

9    . . that the plaintiff can prove no set of facts which would

10   entitle him to relief." Turkmen, 2006 WL 1662663, at *24

11   (citing Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326,

12   329 (2d Cir. 1997)).  Now, following the district court's

13   decision, Twombly and Iqbal require "a heightened pleading

14   standard in those contexts where factual amplification is

15   needed to render a claim plausible." Ross v. Bank of

16   America, N.A. (USA), 524 F.3d 217, 225 (2d Cir. 2008)

17   (internal quotation marks, citations, brackets, and emphasis

18   omitted).  We could undertake to decide whether the

19   challenged claims satisfy the pleading standard of Twombly

20   and Iqbal; however, in the circumstances of this case--where

21   plaintiffs have already announced their intent to file a

22   Fourth Amended Complaint to preserve for the putative class

11

1    the claims asserted only by the settling plaintiffs--we

2    think it better to vacate that portion of the district

3    court's order denying dismissal of the conditions of

4    confinement claims on the ground that an outdated pleading

5    standard was applied, and to remand the case for further

6    proceedings consistent with the standard articulated in

7    Twombly and Iqbal.

8        It may be that the district court will grant plaintiffs

9    leave to file the proposed Fourth Amended Complaint to

10    satisfy the heightened pleading standard.  See Fed. R. Civ.

11    P. 15(a)(2) (providing that a court should "freely give

12    leave when justice so requires").  We decline to consider

13    whether plaintiffs should be allowed to replead yet again

14    because, "[i]n the ordinary course, we are accustomed to

15    reviewing a district court's decision whether to grant or

16    deny leave to amend, rather than making that decision for

17    ourselves in the first instance."  Iqbal v. Ashcroft, 574

18    F.3d 820, 822 (2d Cir. 2009).

19        If the district court denies leave to file the proposed

20    Fourth Amended Complaint, it should evaluate the sufficiency

21    of the Third Amended Complaint in light of the settlement

22    and the heightened pleading standard.  The district court

1  can then address whether, under <u>Twombly</u> and <u>Iqbal</u>, the Third

2  Amended Complaint fails to state a claim, or inadequately

3  alleges the personal involvement of the moving defendants,

4  or entitles the moving defendants to qualified immunity with

5  respect to the conditions of confinement claims.

6      At this stage of proceedings, we do no more than vacate

7  the order denying the motions to dismiss with respect to the

8  conditions of confinement claims, and remand to the district

9  court for further proceedings.

10

11                              **IV**

12      The district court entered final judgment dismissing

13  plaintiffs' length of detention claims as against all

14  defendants for failure to state a claim.  Plaintiffs

15  challenge these dismissals.

16      The claims concerning length of detention allege

17  generally that defendants detained plaintiffs longer than

18  necessary to effect their removal (or voluntary departure)

19  from the United States.  Although plaintiffs acknowledge

20  that they violated the immigration laws (for instance by

21  overstaying their visas), they allege that the Government

22  used these immigration violations "as a cover, as an excuse"

                               13

1    to investigate whether plaintiffs were tied to terrorism.

2    Turkmen, 2006 WL 1662663, at *1.  Plaintiffs maintain that

3    their excessive detentions violated their Fourth and Fifth

4    Amendment rights.[4]

5        **A. The Statutory Scheme**

6        By statute, aliens ordered removed shall be removed by

7    the Attorney General within the 90-day "removal period."

8    See 8 U.S.C. § 1231(a)(1)(A).  The government is required to

9    detain an alien ordered removed until removal is effected,

10   at least for the removal period.  Id. § 1231(a)(2).

11       By regulation, prior to the expiration of the removal

12   period, the District Director or the Director of the

13   Detention and Removal Field Office conducts a "custody

14   review"--a review of an alien's record to determine whether

15   detention is warranted after the removal period (if removal

16   cannot be accomplished during the removal period).  See 8

17   C.F.R. § 241.4(c)(1), (h), (k)(1)(i).  Factors considered in

18   this determination include a detainee's criminal conduct,

_____

[4] Claim 1 alleged that a prolonged detention was an
unreasonable seizure under the Fourth Amendment; Claim 2
that it was a violation of the Due Process Clause of the
Fifth Amendment; and Claim 5 that it (along with other
conduct) violated the equal protection guarantee of the
Fifth Amendment.

14

1   mental health, ties to the United States, prior immigration

2   violations and history, and the likelihood that the alien is

3   a significant flight risk or a potential danger to the

4   community.  See 8 C.F.R. § 241.4(f).  If an alien is further

5   detained, the regulations require additional periodic

6   custody reviews.  See 8 C.F.R. § 241.4(k)(1)(ii), (k)(2).

7   Notice of the records review component of the custody review

8   must be provided to an alien so that he may submit

9   information in support of his release.  See 8 C.F.R. §

10  241.4(h)(2).

11      **B. <u>Zadvydas</u>**

12      In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), two aliens

13  who had been ordered removed claimed that the length of

14  their detention following the 90-day removal period violated

15  their due process rights.  The Government had been unable to

16  remove the aliens because no country was willing to accept

17  them.  The Government argued that 8 U.S.C. § 1231(a)(6)

18  authorizes indefinite post-removal-period detention.  The

19  Supreme Court concluded, however, that such a reading would

20  render the statute unconstitutional in certain contexts

21  under the Fifth Amendment's Due Process Clause, and held

22  that "once removal is no longer reasonably foreseeable,

15

1   continued detention is no longer authorized by statute."

2   Zadvydas, 533 U.S. at 699.

3       In order to give appropriate leeway to the Executive

4   Branch (based on its "immigration-related expertise" and

5   "the serious administrative needs and concerns" associated

6   with immigration enforcement), and "[i]n order to limit the

7   occasions when courts will need to make" the difficult

8   judgments required by recognizing such Executive leeway,

9   Zadvydas accorded a presumption of reasonableness to six

10  months' detention for an alien subject to an order of

11  removal.[5]   Id. at 700-01.   Zadvydas indicated that,

---

[5] The seven named plaintiffs were detained for the
following durations: Turkmen was detained for three months
and 25 days from the date he accepted a voluntary departure
order; Sachdeva was detained for three months and 17 days
after he was ordered removed; Asif-Ur-Rehman Saffi was
detained for four months and 18 days after he was ordered
removed; Ashraf Ibrahim was detained for four months and 22
days after he was ordered removed; Hany Ibrahim was detained
for six months and nine days after he was ordered removed;
Yasser Ebrahim was detained for six months and 16 days after
he was ordered removed; and Shakir Baloch was detained for
six months and 27 days after he was ordered removed.
Accordingly, Turkmen, Sachdeva, and two of the settling
plaintiffs were detained for less than six months; and three
of the settling plaintiffs were detained in excess of six
months.
    Turkmen's and Sachdeva's detentions were under six
months, and thus were presumptively reasonable.  However,
our analysis proceeds to consider detentions in excess of
six months because the proposed intervenor plaintiffs intend
to assert claims 1, 2, and 5.  See Comer v. Cisneros, 37

1    thereafter, the alien's continued detention would be deemed

2    unlawful "if (1) an alien demonstrates that there is no

3    significant likelihood of removal in the reasonably

4    foreseeable future and (2) the government is unable to rebut

5    this showing." Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir.

6    2003). Zadvydas thus "articulates the outer bounds of the

7    Government's ability to detain aliens (other than those

8    serving criminal sentences) without jeopardizing their due

9    process rights." Id.

10       **C. The District Court's Decision**

11       The district court, relying on Zadvydas and Wang,

12    concluded that plaintiffs failed to state a claim because

13    "the complaint does not allege that during the period of

14    their detention there was no significant likelihood of

15    removal in the reasonably foreseeable future." Turkmen,

---

F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named
plaintiffs become moot prior to class certification, there
are several ways in which mootness is not had."); see also
Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("To
the extent that appellants' argument is that Swan's death
does not moot the class claim if one of the proposed
intervenors can be substituted as named plaintiff, we
agree."); In re Nat'l Australia Bank Sec. Litig., No. 03
Civ. 6537(BSJ), 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8,
2006) (explaining that live controversy exists where new
named plaintiff may be substituted or may intervene upon
pre-certification mooting of class representative's claims).

1    2006 WL 1662663, at *39.  The complaint alleged simply that

2    the detentions were "longer than necessary" to effectuate

3    removal.  Id.  As the district court reasoned, recognizing

4    such a claim as a violation of due process would "flood the

5    courts with habeas petitions brought by aliens seeking to be

6    removed as soon as they deemed it practicable."  Id.

7    (emphasis added).  The district court explained that:

8            [Plaintiffs] assume that all that is required for
9            the Attorney General to secure removal is a
10           deportation order and an airplane.  This
11           assumption ignores legitimate foreign policy
12           considerations and significant administrative
13           burdens involved in enforcing immigration law in
14           general, and, specifically, those concerns
15           immediately following a terrorist attack
16           perpetrated on the United States by non-citizens,
17           some of whom had violated the terms of their visas
18           at the time of the attack.
19
20   Id.

21       On appeal, plaintiffs argue that they were detained for

22   a criminal investigation, and their detentions thus

23   constituted separate seizures requiring their own

24   justification and probable cause.  As plaintiffs see it,

25   "the [district] court asked the wrong question.  The

26   question is not how long could Plaintiffs be detained, but

27   for what reason."  Plaintiffs-Appellees-Cross-Appellants'

28   Br. at 20.  Plaintiffs further argue that their prolonged

18

1    detentions violated their rights to substantive due process,

2    procedural due process, and equal protection.[6]

3        **D.  Qualified Immunity**

4        Plaintiffs assert that the Zadvydas standard identifies

5    constitutional violations only "when removal is *impossible*";

6    they submit that it is inadequate to identify constitutional

7    violations where, as alleged here, defendants employ

8    "detention *as an alternative to removal*."  Plaintiffs-

9    Appellees-Cross-Appellants' Br. at 27.  We disagree.  In

10   Whren v. United States, 517 U.S. 806, 813 (1996), the

11   Supreme Court held that a law enforcement official's actual

12   motivation for the Fourth Amendment seizure of a person is

13   constitutionally irrelevant if the seizure is supported by

14   probable cause.  To the extent plaintiffs challenge their

---

[6] Plaintiffs also argue that Ebrahim and Turkmen were removed under 8 U.S.C. § 1227(a)(1)(B), thereby rendering inapplicable the 8 U.S.C. § 1231(a)(6) framework described in the text.  Assuming arguendo that Ebrahim and Turkmen did not waive this argument by failing to raise it before the district court and failing to plead the relevant details, plaintiffs' argument overlooks (i) that an immigration judge found Ebrahim was a disappearance risk, and he thus fell under 8 U.S.C. § 1231(a)(6) (permitting further detention of an alien ordered removed "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal"), and (ii) that Turkmen declined to request bond after he accepted a voluntary departure order.

1   prolonged detention after final orders of removal (or

2   voluntary departure) were entered against them, it is clear

3   from the complaint that such detention was supported by the

4   IJs' findings of removability, which constitute a good deal

5   more than probable cause.  Because plaintiffs were thus

6   lawfully detained as aliens subject to orders of removal (or

7   voluntary departure), they could not state a claim for

8   unconstitutionally prolonged detention without pleading

9   facts plausibly showing "no significant likelihood of

10  removal in the reasonably foreseeable future."  Wang, 320

11  F.3d at 146; see also Zadvydas, 533 U.S. at 699.  In the

12  absence of such a pleading, plaintiffs' challenge to their

13  detention was properly dismissed under Federal Rule of Civil

14  Procedure 12(b)(6).  Moreover, we need not decide whether or

15  under what circumstances aliens subject to removal (or

16  voluntary departure) orders could state claims for

17  unconstitutional detentions without satisfying Zadvydas.  To

18  the extent plaintiffs' claims are not based on Zadvydas, the

19  moving defendants are entitled to qualified immunity.  See

20  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (concluding

21  that two-step qualified immunity analysis set forth in

22  Saucier v. Katz, 533 U.S. 194 (2001), is no longer

20

1   mandatory).

2       In light of the analysis above, plaintiffs can point to

3   no authority clearly establishing a due process right to

4   immediate or prompt removal (following an order of removal

5   or voluntary departure).  Cf. Turkmen, 2006 WL 1662663, at

6   *40.  The moving defendants therefore are entitled to

7   qualified immunity with respect to claim 2.

8       Assuming arguendo that the Fourth Amendment applies to

9   post-arrest detention, probable cause would be required only

10  if the detentions at issue were not otherwise authorized.

11  For reasons stated above, the moving defendants had an

12  objectively reasonable belief that the detentions were

13  authorized, and therefore are entitled to qualified immunity

14  with respect to claim 1.

15      Similarly, plaintiffs point to no authority clearly

16  establishing an equal protection right to be free of

17  selective enforcement of the immigration laws based on

18  national origin, race, or religion at the time of

19  plaintiffs' detentions.  See Reno v. American-Arab Anti-

20  Discrimination Comm., 525 U.S. 471, 490-91 (1999) ("What

21  will be involved in deportation cases is not merely the

22  disclosure of normal domestic law enforcement priorities and

21

1  techniques, but often the disclosure of foreign-policy

2  objectives and (as in this case) foreign-intelligence

3  products and techniques.  The Executive should not have to

4  disclose its 'real' reasons for deeming nationals of a

5  particular country a special threat--or indeed for simply

6  wishing to antagonize a particular foreign country by

7  focusing on that country's nationals--and even if it did

8  disclose them a court would be ill equipped to determine

9  their authenticity and utterly unable to assess their

10  adequacy."); see also Zadvydas, 533 U.S. at 696 ("terrorism"

11  might warrant "special arguments" for "heightened deference

12  to the judgments of the political branches with respect to

13  matters of national security"); Matthews v. Diaz, 426 U.S.

14  67, 81-82 (1976) ("The reasons that preclude judicial review

15  of political questions also dictate a narrow standard of

16  review of decisions made by the Congress or the President in

17  the area of immigration and naturalization."); but see Iqbal

18  v. Hasty, 490 F.3d 143, 175 (2d Cir. 2007) (determining that

19  Reno "does not stand for the proposition that the Government

20  may subject members of a particular race, ethnicity, or

21  religion to more restrictive conditions of confinement than

22  members of other races, ethnic backgrounds, or religions"),

1    <u>rev'd on other grounds and remanded</u>, <u>Iqbal</u>, 129 S. Ct. at

2    1954.   The moving defendants therefore are entitled to

3    qualified immunity with respect to claim 5 (to the extent

4    that claim 5 is based on the length of plaintiffs'

5    detentions).

6

7                            **CONCLUSION**

8         For the foregoing reasons, we affirm in part, vacate in

9    part, and remand for further proceedings consistent with

10   this opinion.

11