UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

IBRAHIM TURKMEN, *et al.*,

       Plaintiffs,

v.

JOHN ASHCROFT, *et al.*,

       Defendants.

Case No. 1:02-cv-02307-DLI-SMG

# DEFENDANT SALVATORE LOPRESTI'S MEMORANDUM ADDRESSING THE BIVENS QUESTION REMANDED BY THE SUPREME COURT OF THE UNITED STATES

February 19, 2018

JAMES J. KEEFE, P.C.
   James J. Keefe (JK 3695)
1225 Franklin Avenue Ste 325
Garden City, NY 11530-1693
516-495-7934

*Attorney for Defendant Salvatore LoPresti*

Defendant Salvatore LoPresti submits the following in connection with the instant application.[1]

Procedurally, the court, on consent of Plaintiffs' counsel, has permitted Defendants LoPresti and Cuciti to participate in the argument on the motion, before the District Court on remand from the United States Supreme Court and the United States Court of Appeals for the Second Circuit. (D 815-817, Order 2/13/18)

LoPresti adopts and incorporates in this submission the arguments advanced by Defendant Hasty. We note that Plaintiffs "accept that the Court's determination of the scope of *Bivens* liability will apply to their claims against the non-appealing defendants – LoPresti and Cuciti – as well." *Plaintiffs' Opening Brief* (D 808-7f) p. 9

The Court has requested that LoPresti and Cuciti address the factual context of their positions in the MDC hierarchy which place them at a lesser "administrative distance from the line-level guards … accused of abuse" than the Warden. *Hasty Opening Brief* (D 808) p 3. Although the "distance" may be shorter, it is no less significant. LoPresti (and Cuciti), like Hasty, may not be held to answer for the actions of subordinates on a theory of vicarious liability. *Id.* at 8, citing *Ashcroft v Iqbal.*

---

[1] Defendant contends that the arguments advanced on LoPresti's behalf as well to Defendant Cuciti; counsel is seeking Defendant Cuciti's authorization to advocate on his behalf.

The issue presented as to LoPresti and Cuciti, then is the same as that involving Hasty: whether "[LoPresti or Cuciti] violated the Fifth Amendment by allowing prison guards to abuse respondents" Id. at 9, quoting from *Ziglar.*

LoPresti and Cuciti are named in the following paragraphs of the Fourth Amended Complaint: 6, 7, 27 (LoPresti), 28 (Cuciti), 69, 73 (LoPresti), 74, 75, 76, 79, 97, 111 (Cuciti), 126 (LoPresti), 129, 130, 132, 305. Of these 305 relates to the 42 USC §1985(3) claim dismissed by the Supreme Court, 126-132 deal with conditions of confinement, embraced under the policy claims dismissed by the Supreme Court, 111 deals with a policy issue (implementation of the "most restrictive conditions" directive from senior authority), as do 97, 79, 76, 75, 74, 73, 69 and 7.

Paragraphs 6, 27 and 28, then, contain the pertinent allegations against LoPresti and Cuciti: [relevant portions of the paragraphs are set out below]:

> "6. By … ordering or condoning [plaintiffs] abuse [defendants] … violated plaintiffs' … rights under the … Constitution."

These allegations are also leveled at Defendant Hasty, (and at other defendants who have since been dismissed from the case).

> "27. Lopresti was frequently present on the ADMAX Unit, regularly reviewed documentation of some of the abuses, and received numerous complaints from 9/11 detainees about abuse and

mistreatment. Despite this information, he did not take any actions to rectify or address the situation. LoPresti is sued in his individual capacity."

"28. Cuciti made rounds on the ADMAX SHU and reviewed logs created by that unit; in those and other ways he heard complaints from MDC Plaintiffs and class members regarding the conditions and abuse described below, yet failed to take any steps to rectify that abuse. Cuciti is sued in his individual capacity"

The allegations against LoPresti and Cuciti are no different in substance than those made against Hasty:

"24. Defendant DENNIS HASTY was the Warden of the MDC until the spring of 2002. While Warden, Hasty had immediate responsibility for the conditions under which MDC Plaintiffs and other class members were confined at the MDC. …

He allowed his subordinates to abuse MDC Plaintiffs and class members with impunity by ignoring some evidence of this abuse and avoiding other evidence—for example, by neglecting to make rounds on the ADMAX unit as required by BOP policy. Despite his attempt to remain blind to the conditions experienced by MDC Plaintiffs and class

members, Hasty was made aware of the abuse that occurred through inmate complaints, staff complaints, hunger strikes, and suicide attempts, and did not take any actions to rectify or address the situation. Hasty is sued in his individual capacity.

Although LoPresti and Cuciti were closer to the line officers, there is no claim in the Fourth Amended Complaint that their knowledge was any more particularized than was Hasty's. It is not claimed that either officer observed any abusive behavior or participated in such. The allegation against each officer, as against the Warden, is that he <u>was told</u> that certain inmates (not identified) suffered abuse at the hands of (unidentified) line officers. These claims were (per the Complaint) primarily made by the inmates. It must be recalled that in the atmosphere prevailing following 9/11 these defendants were aware that the terrorist "playbook" included making false claims of abuse (Hasty Opening Brief, p. 4), and that in the first few weeks of the detention there was little information available, certainly at the level where LoPresti and Cuciti operated, to differentiate bad actors from minor offenders. Further, as is clear from the two investigative reports of the OIG incorporated by reference into the Fourth Amended Complaint, line officers did not readily admit to their superiors that they were violating Bureau of Prisons policy by abusing the inmates in their charge. Supervisors such as

LoPresti and Cuciti would understandably give more weight to denials by their subordinates than complaints by unhappy detainees, especially in the context in which they were operating in the fall of 2001. It also appears from the OIG reports that the medically documented injuries were slight, and that the CRT (DOJ Civil Rights Division) and US Attorney for the Eastern District of New York declined prosecution of any of the offending officers. *Hasty Opening Brief* Exh. B at pp 7-8

The observations made at pp. 9-10 of the Hasty Opening Memorandum about the timeline of the alleged abusive conduct, the lack of specificity as to when and how some actionable knowledge should have been obtained, and lack of specifics as to corrective measures and their efficaciousness, and the conflation of complaints with actual abuse, apply as well to LoPresti and Cuciti. In no way does the Complaint connect any instance of "deliberate indifference" by either supervisor to particular injury to a named plaintiff.

In a similar vein the argument in Section II (D) pp 21-24 of Hasty's Opening Brief is apt in LoPresti and Cuciti's context. *Bivens*, as Hasty argues, is a claim for damages caused by unconstitutional conduct. On the allegations set out in the Fourth Amended Complaint there is no line of reasoning by which injury to some plaintiff can be traced to deliberate indifference or willful conduct by either

LoPresti or Cuciti. Were the name of either defendant substituted for that of Warden Hasty in the narrative on page 22, the glove would fit.

## CONCLUSION

The remaining claim should be dismissed as against all remaining defendants, and the Court should decline to create a new *Bivens* claim for relief.

Dated: February 19, 2018

                                                Respectfully Submitted,

                                                */s/ James J. Keefe*
                                               James J. Keefe (JK 3695)
                                           Attorney for Salvatore LoPresti
                                           1225 Franklin Avenue Suite 325
                                           Garden City, New York 11530
                                             516 495 7934