1001 Pennsylvania Avenue, N.W., Washington, DC  20004-2595 ■ p202 624-2500 ■ f202 628-5116



Clifton S. Elgarten
202-624-2523
celgarten@crowell.com

April 3, 2018

**VIA ECF**

The Honorable Steven M. Gold
Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Turkmen, et al., v. Ashcroft, et al.*, Civ. No. 02-2307-DLI-SMG

Dear Judge Gold:

  This letter responds to plaintiffs' letter dated March 29, 2018, discussing four recent cases, all from outside this Circuit.  None of them advances plaintiffs' argument that their claim survives the alternative remedies and special factors analyses mandated by the Supreme Court.

  1. Plaintiffs cite one appellate case, *Hernandez v. Mesa*, No. 12-50217, 2018 WL 1391730 (5th Cir. Mar. 20, 2018).  As plaintiffs acknowledge, *Hernandez* found that special factors precluded a *Bivens* remedy on the facts at issue.  Although *Hernandez*'s approach to special factors analysis is instructive in a general way—and very supportive of defendants' position—we do not suggest, and plaintiffs do not suggest, that the particular special factors identified in that case are especially relevant here.

  What is relevant about *Hernandez* is that the Fifth Circuit *en banc* panel cited the Second Circuit's teaching on the applicable standard for examining special factors.  "Even before *Abbasi* clarified the 'special factors' inquiry, we agreed with out sister circuits that '[t]he only relevant threshold—that a factor 'counsels hesitation'—is remarkably low.'"  *Hernandez*, 2018 WL 1391730, at *8 (quoting *De La Paz v. Coy*, 786 F.3d 367, 378 (5th Cir. 2015) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (en banc))).  As this Court is aware, *Arar* clearly explained what is meant by "counsels hesitation."  *Arar*, 585 F.3d at 574.  Although the *Arar* standard (along with any additional direction supplied by *Ziglar*) would be binding on this Court in any event, it is notable that it enjoys the endorsement of other courts of appeals.

  2. Plaintiffs cite *Cuevas v. United States*, No. 16-cv-00299, 2018 WL 1399910 (D. Colo. Mar. 19, 2018).  *Cueva*s involved the recurring fact pattern of "inmate-on-inmate" violence.  *Id.* at *2.  It is well established that correctional officers have a duty to protect against—or in *Cuevas*, not to incite—inmate-on-inmate violence, which presents few of the special sensitivities and procedures associated with how prisoner allegations of abuse by line level correctional officers are investigated and treated at a supervisory level, including by OIA and OIG.  *Cuevas* repeatedly emphasized that the allegations there were within what, in the

course of the oral argument in this case, was called the *Bivens* heartland: clear abuse of constitutional rights by line-level officials.  As *Cuevas* explained, that case involved "claims against the particular individual officers who intentionally disclosed the sensitive information about [plaintiff] to his fellow inmates."  *Id.* at *4.  Indeed, the court confirmed that the standards that controlled the individual rank-and-file correctional officers' conduct (as compared, for example, to the duties imposed on a supervisory official, at issue here) were "clearly-established and directed at the individual actions of rank-and-file prison officials . . . ."  *Id.*

In contrast to our case, *Cuevas* involved none of the issues arising from the development and assessment of policies and practices to curb potential abuse (such as the videotaping policy), as first established at the ADMAX SHU in the days and weeks after 9/11.  Nor did it involve an attempt to impose responsibility on supervisory officials to whom plaintiffs would impute knowledge of complaints of guard abuse, but who played no direct role in the abuse and were restricted even in conducting investigations to determine the facts while the OIA and OIG investigations were ongoing.  To the contrary, *Cuevas* noted that the "challenged actions are ordinary incidences of day-to-day prison operations, for which there is law clearly establishing that the practice is unconstitutional, such that there is no risk that this litigation will tread on complex matters of BOP policymaking."  *Id.*

Plaintiffs emphasize that *Cuevas* found that an injunction would not be an effective remedy.  It did so, however, on the facts of that case because the sensitive information at issue had already been set loose and could not be put back in the barn.  That circumstance contrasts sharply with the allegations and circumstances here, as detailed in the briefs and at oral argument.  *See* discussion of *Alexander v. Ortiz* below.  As the Supreme Court suggested, and as Warden Hasty demonstrated, the allegations here are well-suited to injunctive relief.

3.  Plaintiffs also cite *Alexander v. Ortiz*, No. 15-cv-6981, 2018 WL 1399302 (D.N.J. Mar. 20, 2018), another case where the court found that special factors counselled hesitation and the court, therefore, declined to create a *Bivens* remedy.  Contrary to plaintiffs' characterization, *Alexander* suggests no general rule that injunctive relief cannot be considered a viable alternative remedy absent compensation.  To the contrary, the court simply found it was not an effective remedy there, given that the case was about compensation for prior wrongdoing.  *Id.* at *6.  In contrast, the nature of the pattern and practice claim here involving Warden Hasty as supervisor was—as demonstrated in our briefs—well-suited to an injunctive remedy.  Plaintiffs' claims that Warden Hasty allegedly learned of complaints and investigations over time, and then failed to take additional unspecified actions (beyond implementing the videotaping policy, which would require time to assess) builds some element of time that precedes damages liability into those claims.  Meanwhile, injunctive relief to prevent continuing physical abuse would be readily available by an order to show cause.

In any event, nothing in *Alexander* overrides the Supreme Court's suggestion in *Ziglar* that injunctive relief is an effective remedy on facts like these.  Where equitable remedies are available, courts ought not take the constitutionally drastic step of invoking judicial power to manufacture new causes of action for damages.  Alternative remedies, in the form of available causes of action, need not be equivalent to *Bivens* in order for them to protect the constitutional

Judge Steven M. Gold
April 3, 2018
Page 3

interest involved. *See Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("[Alternative] remedies and a potential *Bivens* remedy need not be perfectly congruent."); *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 918 (D.C. Cir. 2018) ("[A] remedial statute need not provide full relief to prompt judicial deference because the touchstone is who should decide whether such a remedy should be provided.") (internal quotation marks omitted).

On the subject of special factors, plaintiffs note that *Alexander* emphasized that Congress created the federal prison industry system. But *Alexander* based that discussion on the extended observation that courts considering whether to extend *Bivens* should steer well-clear of interference with prison policies because prison policy is a matter of executive and legislative branch control. As *Alexander* observed:

> "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. . . . Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint."

*Alexander*, 2018 WL 1399302, at *7 (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (internal citations and quotation marks omitted)). As demonstrated in Warden Hasty's briefs, the prison policies that limited Warden Hasty's range of actions in connection with any investigation of allegations of guard abuse, as well as the active involvement of OIA and OIG investigators and the need to defer to and assess BOP's specially instituted videotaping policies as a means of deterring (or punishing) abuse, all demonstrate that plaintiffs' *Bivens* theories would create just the type of friction with prison policy that courts must avoid.

4.  Plaintiffs also cite *Doty v. Hollingsworth*, No. 15-cv-3016, 2018 WL 1509082 (D.N.J. Mar. 27, 2018), but that case offers no support at all for their position here because the court there found that the case did not present a new context. Therefore, there was no special factors analysis. Plaintiffs say that *Doty* shows that there is nothing novel about applying the deliberate indifference standard to supervisory officials. But that case involved what had become the relatively classic Eighth Amendment claim involving protection from inmate-on-inmate violence where each of the accused defendants had actual knowledge of the relevant history of inmate violence (as opposed, for example, to knowledge of inmate allegations, which must be investigated through established procedures). *Id.* at *2; *see also* discussion of *Cuevas v. United States* above. The claim at issue in *Doty* was found not to present a new context because, on those facts, the district court perceived a long Eighth Amendment history. *Doty*, 2018 WL 1509082, at *3. The case obviously did not involve the complexity associated with an attempt to impose liability on a supervisor based on complaints of guard abuse, given the policies in place to investigate such allegations as well as other steps taken here to curb abuse in the newly created ADMAX SHU following 9/11.

Judge Steven M. Gold
April 3, 2018
Page 4

        Respectfully submitted,

        */s/ Clifton S. Elgarten*

        Clifton S. Elgarten

        *Attorney for Defendant Dennis Hasty*

cc:    All Counsel by ECF