UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IBRAHIM TURKMEN, AKHIL SACHDEVA,            :
AHMER IQBAL ABBASI, ANSER MEHMOOD,   :
BENAMAR BENATTA, AHMED KHALIFA,            :
SAEED HAMMOUDA, and PURNA RAJ                 :
BAJRACHARYA on behalf of themselves and     :
all others similarly situated,                              :
                                                                           :
                                            Plaintiffs,         :
                                                                           :    **MEMORANDUM AND ORDER**
                        -against-                                :    **ADOPTING REPORT AND**
                                                                           :    **RECOMMENDATIONS**
JOHN ASHCROFT, ROBERT MUELLER,           :    02-cv-02307 (DLI) (SMG)
JAMES W. ZIGLAR, DENNIS HASTY,               :
MICHAEL ZENK, JAMES SHERMAN,               :
SALVATORE LOPRESTI, and JOSEPH CUCITI,  :
                                                                           :
                                            Defendants.      :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

This case arises out of alleged abuse suffered by Plaintiffs Ahmer Abbasi, Anser Mehmood, Benamar Benatta, Ahmed Khalifa, Saeed Hammouda, and Purna Bajracharya (collectively, "Plaintiffs") as detainees at the Metropolitan Detention Center ("MDC") in Brooklyn, New York following the September 11, 2011 terrorist attacks.[1] The Fourth Amended Complaint ("FAC") asserts claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) against Defendants Dennis Hasty ("Hasty"), Salvatore LoPresti ("LoPresti"), and Joseph Cuciti ("Cuciti") (collectively, "Defendants"). *See*, FAC, Dkt. Entry No. 726. In light of the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), which dismissed all of

---

[1] This Memorandum and Order's caption mirrors that of Plaintiffs' Fourth Amended Complaint. However, only Ahmer Abbasi, Anser Mehmood, Benamar Benatta, Ahmed Khalifa, Saeed Hammouda, and Purna Bajracharya have claims pending. *See*, Letter from Rachel Meeropol dated February 20, 2018, Dkt. Entry No. 820, at 1. Plaintiffs assert their sole remaining cause of action only against Defendants Dennis Hasty, Salvatore LoPresti, and Joseph Cuciti. *See*, Consent Judgment dated February 27, 2018, Dkt. Entry No. 825 (dismissing the claims against John Ashcroft, Robert Mueller, James Ziglar, James Sherman, and Michael Zenk).

Plaintiffs' claims except for the *Bivens* claim against Hasty, Hasty moved to dismiss the remaining claim against him.  *See*, Fully Briefed Hasty Mot. to Dismiss ("Mot. to Dismiss"), Dkt. Entry No. 808.  Hasty's motion also is applicable to Plaintiffs' *Bivens* claim against LoPresti and Cuciti as the viability of the claim depends on the outcome of the motion.  *See*, Pls.' Mem. of Law in Supp. of *Bivens* Liability, Dkt. Entry No. 808-7, at 9; *See also*, LoPresti's Mem. in Supp. of Hasty's Mot. to Dismiss ("LoPresti Mem."), Dkt. Entry No. 818.  This Court referred the motion to the Honorable Steven M. Gold, then U.S. Magistrate Judge of this Court (ret.), for a Report and Recommendations ("R&R").[2]  *See*, Electronic Referral Order dated January 22, 2018.

On August 13, 2018, the magistrate judge issued the R&R, recommending that this Court grant the motion and dismiss this action in its entirety.  *See*, R&R, Dkt. Entry No. 834.  Plaintiffs and Defendants timely objected to the R&R.  *See*, Pls.' Obj. to the R&R ("Pls. Obj."), Dkt. Entry No. 838; Hasty's Obj. to the R&R ("Hasty Obj."), Dkt. Entry No. 839; LoPresti's and Cuciti's Obj. to the R&R ("LoPresti and Cuciti Obj."), Dkt. Entry No. 840.  Plaintiffs and Defendants responded to each other's objections.[3]  *See*, Pls.' Resp. to Hasty's Limited Obj. to the R&R ("Pls. Resp."), Dkt. Entry No. 842; Hasty's Resp. to Pls.' Obj. to the R&R ("Hasty Resp."), Dkt. Entry No. 843; LoPresti's and Cuciti's Resp. to Pls.' Obj. to the R&R ("LoPresti and Cuciti Resp."), Dkt. Entry No. 844.  Additionally, the parties discussed alleged misrepresentations that Hasty made in his response to Plaintiffs' objection to the R&R and a Third Circuit case from 2019 that Plaintiffs provided as supplemental authority.  *See*, Dkt. Entry Nos. 845-47.  For the reasons set forth below, the R&R is adopted in its entirety and the motion to dismiss is granted.

---

[2] As of January 7, 2021, upon his retirement, Judge Gold no longer is assigned to this case.  The case has been reassigned to the Honorable Robert M. Levy, U.S. Magistrate Judge.

[3] For both the objection to the R&R and response to Plaintiffs' objection to the R&R, LoPresti and Cuciti joined in the memoranda submitted by Hasty and did not file any substantive memoranda of their own.  *See*, LoPresti and Cuciti Obj.; LoPresti and Cuciti Resp.

**BACKGROUND**

The Court presumes the parties' familiarity with the R&R and *Ziglar*, which thoroughly described the facts and the extensive procedural history of this case. Thus, only the facts relevant to the issues before the Court are set forth herein. In the aftermath of September 11, 2001, hundreds of people unlawfully present in the United States were arrested and remained in custody pending determination of their connection to the terrorist acts. *See*, R&R at 2. Plaintiffs, men of Arab, South Asian, or Muslim descent, were detained in Brooklyn, New York federal Metropolitan Detention Center's ("MDC") most restrictive unit, the Administrative Maximum Special Housing Unit ("ADMAX SHU"). *Id*. At the MDC, guards allegedly abused Plaintiffs physically and verbally. *Id*. In the FAC, Plaintiffs assert, *inter alia*, that Hasty, LoPresti, and Cuciti, as the warden, captain, and lieutenant at the MDC, respectively, knowingly allowed the guards to abuse Defendants in violation of the Fifth Amendment (the "prisoner abuse claim"). *Id*. at 3; *See also*, *Ziglar*, 137 S.Ct. at 1854.

In *Ziglar*, the Supreme Court dismissed all of Plaintiffs' claims except for the prisoner abuse claim. *See*, *Ziglar*, 137 S. Ct. at 1863-65, 1869. The Supreme Court remanded the prisoner abuse claim to the Second Circuit to determine the propriety of extending a *Bivens* remedy. *Id.* at 1869. In turn, the Second Circuit mandated this Court to address the matter. *See*, Second Circuit Mandate dated December 1, 2017, Dkt. Entry No. 799 ("emphasiz[ing] in particular that the Supreme Court left open the question as to whether a *Bivens* claim may be brought under the Fifth Amendment against the warden of the Metropolitan Detention Center").

Upon this Court's referral of the motion to dismiss, the magistrate judge considered the mandated issue and concluded that a *Bivens* remedy cannot extend to Plaintiffs' prisoner abuse claim. *See*, R&R at 11. The magistrate judge determined that the potential impact on the Bureau

3

of Prisons' ("BOP") investigatory procedures is a special factor counseling hesitation to extending *Bivens* remedy. *Id.* at 11-18. The magistrate judge also determined that Plaintiffs are precluded from pursuing a *Bivens* claim because Plaintiffs have an alternative remedy under the Federal Torts Claims Act ("FTCA"). *Id*. at 19-22. Accordingly, the magistrate judge recommended that this Court grant the motion to dismiss. *Id.* at 28.

Plaintiffs object to the R&R contending that: (1) the magistrate judge's special factors analysis was "logically and doctrinally incoherent" because he erroneously "speculated" that a warden facing damages under a *Bivens* action would violate BOP policy; and (2) the magistrate judge erred by concluding that the FTCA is an alternative remedy. *See*, Pls. Obj. at 2-3. Defendants also object to the R&R arguing that: (1) the magistrate judge erred by declining to infer congressional intent with respect to extending *Bivens* based on Congress' silence and inaction on the matter; and (2) the magistrate judge erred by finding that injunctive, *habeas*, or administrative relief is not an alternative remedy. *See*, Hasty Obj. at 3.

## **LEGAL STANDARD**

When a party objects to an R&R, a district judge must make a *de novo* determination as to those portions of the R&R to which a party objects. *See*, Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Pursuant to the standard often articulated by the district courts of this Circuit, "[i]f a party . . . simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus v. N.Y. City Dep't of Sanitation*, 2016 WL 5390120, at *1 (E.D.N.Y. Sept. 26, 2016) (internal citations and quotation marks omitted); *See also*, *Rolle v. Educ. Bus Transp., Inc.*, 2014 WL 4662267, at *1 (E.D.N.Y. Sept. 17, 2014) ("[A] rehashing of the same arguments set forth in the original papers . . . would reduce the magistrate's work to something akin to a meaningless dress rehearsal.") (internal

4

citations and quotation marks omitted).

On the other hand, the Court of Appeals for the Second Circuit has suggested that a clear error review may not be appropriate "where arguably 'the only way for [a party] to raise . . . arguments [is] to reiterate them.'" *Moss v. Colvin*, 845 F.3d 516, 519 n.2 (2d Cir. 2017) (quoting *Watson v. Geithner*, 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013)). Nonetheless, a court will not "ordinarily . . . consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." *Santiago v. City of N.Y.*, 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 27, 2016) (internal citation and quotation marks omitted).

After its review, the district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *See also*, 28 U.S.C. § 636(b)(1).

## DISCUSSION

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *McGowan v. United States*, 825 F.3d 118, 123 (2d Cir. 2016) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The *Bivens* Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against Federal Bureau of Investigation agents for handcuffing a man in his own home without a warrant. *Bivens*, 403 U.S. at 389, 397. Since then, the Supreme Court has recognized *Bivens* claims in only two other circumstances: (1) under the Fifth Amendment's Due Process Clause for gender discrimination against a congressman for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) under the Eighth

5

Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an inmate's asthma which led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).

In *Ziglar*, the Supreme Court made it clear that the only recognized implied rights of action are the narrow situations presented in *Bivens*, *Davis*, and *Carlson*. *See*, *Ziglar*, 137 S.Ct. at 1855-57. The Supreme Court emphasized that, "[g]iven the notable change in the [Supreme] Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The Supreme Court has set out a rigorous two-step inquiry in order for courts to determine whether a *Bivens* cause of action applies in a new context or against a new category of defendants. First, the court must determine whether a plaintiff's claims arise in a new *Bivens* context. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id*. at 1859. If the case presents a new factual context for a *Bivens* claim, then the court proceeds to the second step and asks, "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

Irrespective of whether an alternative remedy exists, a federal court also must conduct a specific analysis, "paying particular heed . . . to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* (internal quotation marks omitted). This second step often is referred to as the special factors analysis. "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S.Ct. at 1857 (internal quotation marks

omitted). Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" the Court has observed that "[t]he necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. Put more simply, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858.

As the magistrate judge properly noted, the Supreme Court already has analyzed the first step and held that "this case does seek to extend *Carlson* to a new context" as this case implicates a different constitutional right than that in *Carlson*. *Id*. at 1864; *See also*, R&R at 8. Accordingly, as the Supreme Court has directed, and the magistrate judge correctly has stated, "the only remaining issue is whether there are 'special factors counseling hesitation' or alternative remedies that would preclude the extension of *Bivens* required for [P]laintiffs' claims to proceed." R&R at 10; *See also*, *Ziglar*, 137 S.Ct. at 1865.

I.  **Special Factors Analysis**

   A.  **Defendants' Objection**

The magistrate judge determined that Congress' silence and inaction in enacting a *Bivens* type remedy is a not a special factor because "congressional intent here is too ambiguous." *Id.* at 16. Defendants object to the magistrate judge's determination on three grounds: (1) rather than enacting a damages remedy statute, Congress sought to address complaints of detainee abuse with an investigation by the Office of Inspector General ("OIG") of the U.S. Department of Justice as part of the USA PATRIOT Act; (2) Congress chose not to enact a damages remedy even though it was aware of the detainee abuse allegations specifically at the MDC through a supplemental OIG report and hearings; and (3) by passing the Prison Litigation Reform Act of 1995 ("PLRA")

7

without enacting a corresponding *Bivens* type remedy, Congress indicated its reluctance to create a damages remedy. *See*, Hasty Obj. at 5-9. Defendants contend that Congress' inaction despite its "active interest in this field" demonstrates that "this is properly an area of congressional interest and inquiry" and "not one into which the Judiciary ought lightly intrude." *Id.* at 9. The objected portion of the R&R is reviewed for clear error because the magistrate judge addressed these same arguments in the R&R. *See*, R&R at 11-16.

In reaching his conclusion, the magistrate judge not only considered Defendants' arguments but also Plaintiffs' counterarguments. Plaintiffs argued that Congress' silence "in the face of [the OIG] reports in fact suggests its tacit approval of extending *Bivens* and allowing [P]laintiffs to proceed with their claims," especially given that the reports specifically referred to the present litigation. *Id.* at 12. Moreover, with respect to the PLRA, Plaintiffs contended that the PLRA does not apply to undocumented alien detainees like Plaintiffs and, thus, has no bearing on whether a *Bivens* remedy should extend to Plaintiffs' prisoner abuse claim. *Id.* at 13. Plaintiffs further contended that, when Congress passed the PLRA, it presumed the existence of a *Bivens* cause of action for prisoner abuse. *Id.* at 14.

The Court finds that the magistrate judge did not commit any clear error in considering the parties' arguments and finding that the congressional intent here is "too ambiguous to provide meaningful support for either side's position." *Id.* at 16 (citing *Wilkie*, 551 U.S. at 554). As the magistrate judge properly found, inferring congressional intent in this context requires a level of speculation and such speculation is difficult and inconclusive when it involves deciphering "the inaction of a legislative body with hundreds of members, each of whom may have his or her own reasons for not acting." *Id.* Therefore, Defendants' objection is overruled.

8

### B. Plaintiffs' Objection

The magistrate judge concluded that the potential impact on the BOP's investigatory procedures and policies is a special factor counseling hesitation against extending a *Bivens* remedy to Plaintiffs' prisoner abuse claim. *Id.* at 16. In reaching this conclusion, the magistrate judge considered procedures promulgated by the Office of Internal Affairs ("OIA") and BOP for investigating and handling allegations of abuse by correctional officers. *Id.* at 16-18. The magistrate judge found that imposing personal liability on a warden who is indifferent to abuse by correctional officers under his or her supervision "might impede, or at least affect, the efficacy of these practices and procedures" in order to avoid liability under a *Bivens* type remedy. *Id.* at 18.

Plaintiffs argue that the magistrate judge erroneously "assumes that federal employees will violate their own regulations to escape potential liability." Pls. Obj. at 14. Plaintiffs contend that the magistrate judge's "distrust of federal officials is wholly unsupported" as Hasty did not make such an argument. *Id.* at 15. Plaintiffs also contend that the magistrate judge's finding is "flawed as a matter of logic and precedent" because a warden seeking to avoid liability is more likely to follow the relevant investigatory procedures rather than violating them. *Id.* at 15-16. Relying on the Supreme Court's remark in *Ziglar* that Plaintiffs' allegations here are "just as compelling as those at issue in *Carlson*[,]" Plaintiffs assert that the magistrate judge "transforms what made Plaintiffs' claim compelling to the Supreme Court into an argument against a *Bivens* remedy." *Id.* at 16 (citing *Ziglar*, 137 S.Ct. at 1864). Lastly, Plaintiffs assert that a different special factors analysis must be applied in this case because Plaintiffs seek only "a modest extension" of a *Bivens* remedy. *Id.* at 17-18.

Reviewing the magistrate judge's findings and recommendations on this issue *de novo*, the Court finds no merit to Plaintiffs' arguments. As an initial matter, contrary to Plaintiff's assertion,

9

the magistrate judge was not limited to the parties' arguments in conducting his analysis. Indeed, the magistrate judge properly analyzed the very factors that the Supreme Court set forth in *Ziglar*. In *Ziglar*, the Supreme Court stated that:

> [T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.

*Ziglar*, 137 S.Ct. at 1858.

Accordingly, the magistrate judge considered the following potential impacts: a warden choosing not to report abusive acts by correctional officers to OIA; a warden deciding to report abusive acts only after conducting his or her own preliminary inquiry; and a warden not enforcing BOP requirements of recording detainee movements or abuse in order to avoid liability. *See*, R&R at 17-18. The magistrate judge further considered the costs to the government in the form of defense and indemnification, resources and time required for litigations, the disruptive impact litigations will have on wardens and supervisory officials from performing their duties, and the possibility of wardens adopting supervisory practices they otherwise might not because they may be accountable for failing to monitor and control the actions of officers under their command. *Id.* at 18.

In addition, Plaintiffs' reliance on the Supreme Court's comparison of their claims to the claims in *Carlson* is misplaced. In *Ziglar*, while recognizing that this case "has significant parallels" to *Carlson*, the Supreme Court nonetheless emphasized the necessity for a special factors analysis because this case "seeks to extend *Carlson* to a new context." *Ziglar*, 137 S.Ct. at 1864. Moreover, without citing to support, Plaintiffs baldly assert that the special factors analysis must

10

differ in this case. As the magistrate judge properly and thoroughly explained, whether a case seeks "a modest extension" of a *Bivens* remedy is immaterial to applying the special factors analysis and standard. *See*, R&R at 10-11. The Supreme Court emphasized that "even a modest extension is still an extension" and directed the lower courts to conduct a special factors analysis without distinguishing between an extension and a modest extension. *See*, *Ziglar*, 137 S.Ct. at 1864-65.

Furthermore, as the magistrate judge correctly stated, the threshold for finding a special factor that counsels hesitation "is remarkably low. . . . Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require. 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider." R&R at 18 (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (internal quotation marks omitted)). The magistrate judge appropriately applied this standard to conclude that a special factor exists in this case that counsels hesitation against extending a *Bivens* remedy. *Id.* at 18-19. Accordingly, Plaintiffs' objection here is overruled.

## II.     Alternative Remedies

### A.     Plaintiffs' Objection

Plaintiffs object to the magistrate judge's finding that the FTCA provides a sufficient alternative remedy that precludes authorizing a *Bivens* action. *See*, Pls. Obj. 19-22. Plaintiffs' entire objection relies on the *Carlson* holding that the FTCA is "not a relevant remedial scheme bearing on *Bivens* availability." *Id.* at 21. Plaintiffs contend that the magistrate judge erred by ignoring this precedent set in *Carlson*. *Id.* at 19. Since the magistrate judge already has addressed this contention in the R&R, the Court reviews this portion of the R&R for clear error. *See*, R&R at 20.

11

As the magistrate judge correctly pointed out, the FTCA analysis in *Carlson* "cannot survive *Ziglar*." *Id.* In *Ziglar*, the Supreme Court made it clear that the legal landscape has changed since *Carlson*. As the Supreme Court noted, "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar*, 137 S.Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). Accordingly, the Supreme Court has urged "caution" before "extending *Bivens* remedies into any new context. . . . The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (internal quotation marks and citations omitted). Indeed, the Supreme Court stated that *Bivens*, *Carlson* and *Davis* are a relic of an "*ancien regime*" and "might have been different if they were decided today." *Id.* at 1855-66 (citing *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). As such, Plaintiffs' reliance on *Carlson* or any other pre-*Ziglar* case to object to the R&R is misplaced. *See*, Pls. Obj. at 19-24.

"[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 137 S.Ct. at 1863 (citing cases). In determining that the FTCA is an available alternative remedy to preclude a *Bivens* remedy, the magistrate judge properly compared *Carlson* and *Ziglar* and found that "*Ziglar* takes a far broader view of" alternative remedies that preclude a *Bivens* remedy. R&R at 20. The magistrate judge accurately relied on the Supreme Court's finding that, "if Congress has created any alternative, existing process for protecting the [injured party's] interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a remedy." *Ziglar*, 137 S.Ct. at 1858 (internal quotation marks and citations omitted). The magistrate judge further considered relevant district court cases, as well as a Ninth Circuit case offered by Plaintiffs, to conclude that the *Carlson* holding concerning FTCA no longer has "vitality" in light of *Ziglar*. *Id.* at 21-22. Thus, Plaintiffs' objection here is overruled.

**B.     Defendants' Objection**

Defendants object to the magistrate judge's finding that "neither injunctive nor *habeas* relief, nor administrative remedies constituted alternative remedies." Hasty Obj. at 10. However, this contention is moot in light of the Court's adoption of the magistrate judge's conclusion that the FTCA is an available alternative remedy. *See*, discussion *supra* Section II.A. As the magistrate judge found, since the FTCA provides Plaintiffs with an alternative remedy precluding their *Bivens* claim, this Court "need not decide whether injunctive or *habeas* relief, or an administrative grievance, did as well." R&R at 24. Accordingly, Defendants' objection here is overruled.

It is clear from a review of the magistrate judge's exceptionally detailed, thorough, and well reasoned R&R that the magistrate judge disposed of Plaintiffs' prisoner abuse claim appropriately, abundantly supporting his findings with facts from the record and legal precedent. As set forth above, the parties' objections are overruled, and the R&R is adopted in its entirety. Thus, the motion to dismiss is granted and Plaintiffs' claim against Defendants is dismissed.

## CONCLUSION

The parties' objections are overruled, and the R&R is adopted in its entirety. Accordingly, the motion to dismiss this action is granted.

SO ORDERED.

Dated: Brooklyn, New York
        September 9, 2021

                                                                /s/
                                                    DORA L. IRIZARRY
                                                    United States District Judge